# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Statesboro Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 5:00 pm, Sep 29, 2017

In re:                                    )
                                          )
STEVEN A. TRUDELLE,                        )          Chapter 13
                                          )
                    *Debtor.*              )          Number <u>16-60382-EJC</u>
                                          )
_____)_____
                                          )
STEVEN A. TRUDELLE,                        )
                                          )
                    *Movant,*              )
                                          )
v.                                         )
                                          )
PHH MORTGAGE CORPORATION,                   )
                                          )
                    *Respondent.*          )

## OPINION ON DEBTOR'S MOTION FOR DETERMINATION OF FEES, EXPENSES, OR CHARGES UNDER BANKRUPTCY RULE 3002.1(e)

Before the Court is the Debtor's "Objection to the Post-Petition Mortgage Fees, Expenses, and Charges" (dckt. 29) asserted by PHH Mortgage Corporation ("PHH Mortgage"). The Court construes the Objection as a motion for determination of fees, expenses, or charges under Federal Rule of Bankruptcy Procedure 3002.1(e). After careful consideration of the arguments of counsel, evidence submitted, and applicable law, the Court issues the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 9014(c). For the reasons set forth below, it is ORDERED that the Motion is GRANTED.

%AO 72A
(Rev. 8/82)

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. FINDINGS OF FACT

The Debtor filed this Chapter 13 case on August 23, 2016. PHH Mortgage timely filed a proof of claim on December 7, 2016, asserting a secured claim in the amount of $56,636.88 based on a first mortgage on the Debtor's principal residence. In his Schedule D, the Debtor valued the claim at $58,000.00 and valued the residence at $55,000.00. (Dckt. 1). On April 17, 2017, PHH Mortgage filed its Notice of Post-Petition Mortgage Fees, Expenses, and Charges ("Notice of Fees"). On May 15, 2017, the Debtor filed his Objection to the Post-Petition Mortgage Fees, Expenses, and Charges ("Motion for Determination") (dckt. 29) asserted by PHH Mortgage, which is actually a motion for determination of fees, expenses, or charges under Rule 3002.1(e). *See In re Lighty*, 513 B.R. 489, 490 (Bankr. D.S.C. 2014) (treating "objection" to post-petition charge as motion under Rule 3002.1(e)).

The Notice of Fees filed by PHH Mortgage disclosed that $250.00 for "Attorney Fees -Prep/analysis of 410A"[1] and $350.00 for "Bankruptcy/Proof of claim fees"

---

[1] Official Form 410A is entitled "Mortgage Proof of Claim Attachment" and requires a substantial amount of information regarding payment history and the application of funds received. This form was attached to PHH Mortgage's proof of claim.

had been incurred on the Debtor's mortgage account on "December 7, 2017."[2] The Debtor's Motion for Determination raises the following objections: (1) "[PHH Mortgage] has provided no documentation evidencing the fact that the charge is authorized under the Security Deed and Note or allowed under state law"; (2) "PHH Mortgage . . . did not attach any documents proving that the payment of this fee or charge is required by the underlying agreement and applicable non bankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the [C]ode"; and (3) "[u]pon information and belief, PHH Mortgage . . . did not issue a notice pursuant to O.C.G.A. § 13-1-11 more than ten days prior to the date of filing." (Dckt. 29).

In its response to the motion (dckt. 32), PHH Mortgage argues four points: (1) that the parties' underlying agreement, specifically paragraph 14 of the Security Deed,[3] permits PHH Mortgage to collect its post-petition charges from the Debtor; (2) that its attorneys' fees are reasonable and that the Debtor's "objection fails to show otherwise"; (3) that the fees are recoverable pursuant to 11 U.S.C. § 506(b); and (4) that "disallowing or reducing the fees would be tantamount to modifying [PHH Mortgage's] claim which is secured by the Debtor's principal residence." The Court held a hearing on the motion on July 20, 2017. The Debtor appeared through counsel. PHH Mortgage did not appear at the hearing. At the conclusion of the hearing, the Court took the matter under advisement.

---

[2] This is obviously a typographical error. PHH Mortgage filed its proof of claim on December 7, 2016.

[3] Paragraph 14 of the Security Deed permits PHH Mortgage to "charge [the Debtor] fees for services performed in connection with [the Debtor's] default . . . including, but not limited to, attorneys' fees, property inspection and valuation fees." (Dckt. 32-1).

## III. CONCLUSIONS OF LAW

### A.   Post-Petition Fees, Expenses, or Charges Under Rule 3002.1

Bankruptcy Rule 3002.1, **Notice Relating to Claims Secured by Security Interest in the Debtor's Personal Residence,** applies in Chapter 13 to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or debtor will make contractual installment payments. Fed. R. Bankr. P. 3002.1(a). Here, PHH Mortgage is the holder of a claim in the amount of $56,636.88,[4] secured by a security interest in real property that is the Debtor's principal residence. (Claims Register 6-1). The Debtor's confirmed Chapter 13 plan (the "Plan") provides for PHH Mortgage's claim to be paid "at the contract rate" with the Debtor making direct payments to PHH Mortgage.[5] (Dckt. 7, ¶ 2(d)). Accordingly, Rule 3002.1 applies to PHH Mortgage's claim.

Rule 3002.1 was first added in 2011 and the Advisory Committee Notes describe the purpose of the rule:

> This rule is new. It is added to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan. It applies whether the trustee or the debtor is the disbursing agent for post-petition mortgage payments.

---

[4] PHH Mortgage's proof of claim includes a $40.00 arrearage. According to Debtor's counsel, the Debtor was inexplicably charged a miscellaneous fee of $40.00 back in 2013. This charge appears to be reflected on the attachment to the proof of claim as a $40.00 charge described as "FC Misc Fees" on April 8, 2013. (Claims Register 6-1, p. 5 of 42).

[5] The Plan does not provide for any cure payments on PHH Mortgage's $40.00 arrearage claim. (Dckt. 7, ¶ 2(g)) Nor has the Debtor objected to that $40.00 portion of PHH Mortgage's secured claim.

In order to be able to fulfill the obligations of § 1322(b)(5)[6], a debtor and the trustee must be informed of the exact amount needed to cure any pre-petition arrearage, see Rule 3001(c)(2), and the amount of the post-petition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust post-petition mortgage payments to cover any properly claimed adjustment.

Fed. R. Bankr. P. 3002.1 Advisory Committee's Note to 2016 amendment. Under subdivision (b), which is not at issue in this case, the holder of the claim is required to provide notice of any post-petition changes in the mortgage payment amount. This case, however, turns on the provisions of subsections (c) and (e) which provide as follows:

(c) **Notice of Fees, Expenses, and Charges.** The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

. . .

(e) **Determination of Fees, Expenses, or Charges.** On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable non-bankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

Fed. R. Bankr. P. 3002.1(c), (e) (emphasis added).

Once PHH Mortgage filed its Notice of Fees, the Debtor was entitled to seek

---

[6] The Rule was amended effective December 1, 2016, by deleting any reference in subsection (a) to § 1322(b)(5), "to make clear that the rule applies even if there is no pre-petition arrearage to be cured." Fed. R. Bankr. P. 3002.1 advisory committee's note to 2016 amendment.

a ruling from the Court whether such fees are "required by the underlying agreement and applicable non-bankruptcy law." *Id.* When a court is called upon to make a determination of fees, expenses, and charges under 3002.1(e), a host of issues come into play: (i) the burden of proof; (ii) the contractual provisions of the "underlying agreement"; (iii) the evidence in support of the claimed fees; and (iv) the enforceability of the asserted fees under "applicable non-bankruptcy law." The Court will address each of these matters. The Court will also address the additional issues raised by the parties, including the relationship between Rule 3002.1(e) and 11 U.S.C. § 506(b).

## B.    Burden of Proof on Motion for Determination

Procedurally, this matter is before the Court on the Debtor's objection to the Notice of Fees. As mentioned above, the Court is treating the objection[7] as a motion for determination of fees, expenses, or charges pursuant to Rule 3002.1(e). And, although the Debtor filed the objection, the Court finds that PHH Mortgage bears the burden of proving its entitlement to the attorneys' fees at issue. As one court addressing the burden of proof observed:

> Under Rule 3002.1(d), the *prima facie* evidentiary benefits of filing a proof of claim under Rule 3001(f) do not apply to a creditor's notice of post-petition

---

[7] The pleading filed by the Debtor is in the form of a claim objection in every respect except the title used. The first page of the pleading provides notice to PHH Mortgage that the Debtor is objecting to its *claim*. Likewise, the first page of the objection itself states: "Now comes [Debtor] . . . and objects to the Proof of Claim filed by PHH Mortgage Corporation." (Dckt. 29, p. 3.) The body of the objection goes on to recite that PHH Mortgage filed both a proof of claim on December 7, 2016, and Notice of Post-Petition Mortgage Fees, Expenses and Charges on April 17, 2017. However, only the post-petition fees of $600.00 are the focus of the objection.

fees, which suggests that the drafters did not intend to afford creditors any special advantage with respect to supplemental fees and charges. Moreover, the creditor is the party seeking to change the status quo by asking for amounts beyond the amount set forth in the original proof of claim — a typical basis for assigning the burden of proof, and the Debtor's request for a "determination" or declaratory relief under Rule 3002.1(e) does not change this fact. Similarly, in general the creditor is the entity with the greater knowledge of the circumstances giving rise to the supplemental charges . . . Therefore, the court finds that the risk of non-persuasion under Rule 3002.1(e) falls on the Lender.

*In re Brumley*, No. DG 16-00819, 2017 WL 3129735, at *2 (Bankr. W.D. Mich. July 24, 2017). The Court agrees that the burden of proof under Rule 3002.1(e) falls on the creditor asserting the fee, expense, or charge.

### C.   The Contractual Provisions of the Underlying Agreement Require the Fees.

The first issue for determination under Rule 3002.1(e) is whether payment of the fees is required by the underlying agreement. The Court finds that there is in the record sufficient evidence of the *contractual provisions* to support the fees at issue in this case. The original Proof of Claim filed by PHH Mortgage included, among other things, the following attachments: (i) Official Form 410A - Mortgage Proof of Claim Attachment, which includes a detailed payment history from April 1, 2013; (ii) Note in the original amount of $66,405.00, dated December 8, 2006; (iii) Security Deed[8] dated and recorded on December 8, 2006; and (iv) Corporate Assignment of Security Deed from ERA Mortgage to PHH Mortgage recorded in Evans County, Georgia, on December 2, 2016. The Debtor did not object to any part of

---

[8] Bankruptcy Rule 3001(d) requires that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."

the proof of claim, only the attorneys' fees of $600.00 set forth in the Notice of Fees. Specifically, the Debtor has not disputed the validity of the Security Deed attached to the original proof of claim.

In response to the Debtor's objection to its Notice of Fees, PHH Mortgage attached another copy of the Note and Security Deed. PHH Mortgage specifically referenced paragraph 14 of the Security Deed in support of its Notice of Fees. (Dckt. 32-1, p. 10). That paragraph reads as follows:

> **14. Loan Charges**. Lender may charge Borrower fees for services performed in connection with the Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

*Id.* This provision is not the only provision in the Security Deed authorizing the recovery of attorneys' fees and other expenses. Under paragraph 22, where the debt is accelerated and the Lender invokes the power of sale, the Security Deed provides that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including but not limited to, reasonable attorneys' fees and costs of title evidence." As discussed below, paragraph 22 does not appear to be applicable to the facts of this case since the Debtor was not in default on the petition date and the note had not matured. In addition to the language of paragraph 14, PHH Mortgage's entitlement to recover these post-petition fees is set out with some particularity in paragraph 9 of the Security Deed:

> **9.   Protection of Lender's Interest in the Property and Rights Under this**

> **Security Instrument.** If . . . (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: . . . (b) appearing in court; and ( c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

*Id.* at pp. 7-8. It is precisely these types of fees and charges described in paragraph 9 that PHH Mortgage has disclosed in the Notice of Fees. Under this provision of the Security Deed, the Lender bargained for the right to protect its interests in the event the Debtor filed bankruptcy, including asserting "its secured position in a bankruptcy proceeding." *Id.* By filing a detailed proof of claim, and by attaching proof of its security interest as required by Rule 3001(d), together with the rather complex Mortgage Proof of Claim Attachment, PHH Mortgage has taken steps to assert "its secured position" in this bankruptcy proceeding. Accordingly, the Court finds that "payment of [the] claimed fee . . . is required by the underlying agreement" within the meaning of Bankruptcy Rule 3002.1(e). But that does not end the inquiry. The Court must determine whether this payment is required by applicable non-bankruptcy law (i.e. whether the provision is enforceable) and whether PHH Mortgage has proved the amount of fees to which it is entitled, including whether the fees are reasonable.

## D.   Are the Fees Enforceable under Georgia Law?

As to the enforceability of the attorneys' fees provisions of the Security Deed, the Court will first address the argument Debtor's counsel asserted at the hearing, as well as in her objection to the Notice of Fees, that under Georgia law a lender can never collect attorneys' fees if it has not provided the so-called 10-day letter required by O.C.G.A. § 13-1-11. The relevant portion of that statute reads as follows:

> O.C.G.A. § 13-1-11 **Attorney's fees in notes, etc., in addition to interest**
>
> (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney **after maturity,** subject to subsection (b)[9] of this Code section and to the following provisions:
>
> (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
>
> (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00; and
>
> (3) The holder of the note or other evidence of indebtedness or his or her attorney at law shall, **after maturity of the obligation,** notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the

---

[9] O.C.G.A. § 13-1-11(b) adds certain requirements when attorney's fees calculated under subsection (a)(2) total more than $20,000.00. Under subsection (b), the party required to pay attorney's fees in excess of $20,000.00 may petition the court to determine the reasonableness of such fees. O.C.G.A. § 13-1-11(b)(1).

principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. . . .

O.C.G.A. § 13-1-11 (emphasis added). The Debtor contends that under Georgia law, a creditor's right to payment of attorneys' fees remains unperfected until the expiration of ten days following service of the notice required by O.C.G.A. § 13-1-11 (commonly referred to as the "10-day letter"). *In re Snow*, No. 04-30995, slip op. at 5-6 (Bankr. S.D. Ga. Aug. 26, 2005) (Dalis, J.). If the creditor fails to send the 10-day letter, then its right to collect attorneys' fees does not vest at state law, and the creditor is barred from collecting those fees. *Id.* The party seeking to collect attorneys' fees bears the burden of proving compliance with the 10-day notice requirement of O.C.G.A. § 13-1-11. *Chrysler Credit Corp. v. Smith*, 143 B.R. 284, 292-93 (Bankr. M.D. Ga. 1992).

The Debtor's reliance on O.C.G.A. § 13-1-11 is misplaced because the mortgage debt at issue is not in default and has not matured. As the Georgia Court of Appeals noted in the case of *Boddy Enterprises, Inc. v. City of Atlanta*, 171 Ga. App. 551, 553, 320 S.E.2d 374, 375 (1984):

> The ten-day notice requirement of O.C.G.A. § 13-1-11(a)(3) was designed to apprise a debtor in default under the note or deed of the creditor's intention to bring suit for the full amount due as well as the attorney fees specified in the instrument, and, as analyzed by the Supreme Court, "is clearly intended to require the creditor to give the debtor an opportunity to meet his obligation without incurring additional expenses of litigation in the nature of attorney fees." *See Gen. Elec. Credit Corp. V. Brooks*, 242 Ga. 109, 114, 249 S.E. 2d 596 and cases cited and discussed therein. . . .

Our review of OCGA § 13-1-11 and the cases interpreting it convinces us that

this statute was intended to apply **only in default situations where "an indebtedness is collected by or through an attorney after maturity,"** and that the provision in the deed NBG sought to enforce for reasonable attorney fees incurred as a result of an eminent domain proceeding in order to protect its security interest in the condemned property was not contemplated by the statutory scheme.

*Id.* at 552-53 (emphasis added). In *Boddy Enterprises*, supra, the security deed at issue allowed the creditor to claim as additional security any condemnation award under eminent domain to which the borrower became entitled and to claim "the reasonable attorney's fees, costs and disbursements incurred by [creditor] in connection with the collection of such award or payment." The *Boddy Enterprises* court held that the entitlement to attorneys' fees to enforce this part of the security deed did not require notice under O.C.G.A. § 13-1-11.

Similarly, in the case of *Colonial Bank v. Boulder Bankcard Processing, Inc.*, 254 Ga. App 686, 689-90, 563 S.E.2d 492, 496-97 (2002), the court was called upon to address an attorneys' fees provision in an indemnity agreement:

Colonial also argues that the recovery of attorney fees is barred because BBP failed to comply with the notice provision of O.C.G.A. § 13-1-11. That Code section, however, applies only where attorney fees were incurred in the collection of a note or other evidence of indebtedness" upon maturity and default. We conclude that BBP's enforcement of the indemnity agreement is not the type of default situation contemplated by O.C.G.A. § 13-1-11. Therefore, that Code section is inapplicable to this case.

In support of her argument that the 10-day notice provision of O.C.G.A. § 13-1-11 bars collection of the $600.00 in attorneys' fees disclosed in the Notice of Fees, Debtor's counsel cited the Court to two cases, namely *In re Snow*, No. 04-30995, slip op. at 5-6 (Bankr. S.D. Ga. Aug. 26, 2005) (Dalis, J.), and *In re Clark*, 299 B.R. 694 (Bankr. S.D. Ga. 2003) (Dalis,

J.). Both cases, however, are distinguishable. Both predate Rule 3002.1, which was adopted

in 2011. Therefore, neither case addresses the issue currently before the Court. It is true that

in both cases this Court held that failure to comply with O.C.G.A. § 13-1-11 requires a

creditor's claim for attorneys' fees to be disallowed under § 502 as unenforceable under

applicable non-bankruptcy law. *See Snow*, No. 04-30995, slip op. at 6-7; *Clark* 299 B.R. at

699-700. But in *Clark*, the debtor had defaulted on the terms of a promissory note and

security deed, and the debt came due. No such default is alleged to have occurred in this case.

In *Snow*, Judge Dalis correctly described the notice requirements of O.C.G.A. § 13-1-11 in

a default context but not one where the loan had not matured. The Court does not find the

holding in *Snow* persuasive in light of *Boddy Enterprises* and *Colonial Bank*. The Court

therefore concludes that PHH Mortgage's failure to comply with O.C.G.A. § 13-1-11 does

not preclude it from recovering the attorneys' fees it disclosed pursuant to Rule 3002.1(c).

The Debtor raised no other defenses under Georgia law. Accordingly, the Court finds that

such attorneys' fees are enforceable under Georgia law.


**E.    Are the Fees Allowable Under § 506(b), and Does that Matter?**

In its response to the Debtor's Motion for Determination, PHH Mortgage

specifically asserts that "pursuant to 11 U.S.C. § 506(b), the fees are recoverable." (Dckt. 32,

p. 2). While the reported cases addressing issues under Rule 3002.1(e) are few in number,

some courts seem to assume that a notice of fees filed pursuant to Rule 3002.1(c) necessarily

implicates 11 U.S.C. § 506(b). *See In re Tatum*, No.: 15-31925 VFP; 2017 WL 3311219, at

*1-3 (Bankr. D.N.J. May 15, 2017); *In re Herman*, No. 15-80027-G3-13, 2016 WL 520306, *2-3 (Bankr. S.D. Tex. Feb. 9, 2016) (creditor "failed to sustain its burden of proof to show that the fees are reasonable under section 506(b) of the Bankruptcy Code"); *In re Susanek*, No. 12-23545-GLT, 2014 WL 4960885, at *3 (Bankr. W.D. Pa. Sept. 30, 2014); *In re Fuentes*, 509 B.R. 832, 835-36 (Bankr. S.D. Tex. March 13, 2014). Section 506 provides in relevant part as follows:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Section 506(b) applies only to *post-petition* attorneys' fees. *In re Garner*, 663 F.3d 1218, 1220 (11th Cir. 2011). Since Rule 3002.1(c) also relates to post-petition attorneys' fees (as well as other charges and expenses), it is perhaps natural to draw a connection between Rules 3002.1(c) and (e), and 11 U.S.C. § 506(b). Under § 506(b), a lender with an allowed secured claim may recover attorneys' fees and costs provided "(1) the creditor is over-secured; (2) the fees are reasonable; and (3) the fees are provided for in the agreement or state statute under which the claim arose." *In re Amron Techs., Inc.*, 376 B.R. 49, 54 (Bankr. M.D. Ga. 2007) (Walker, J.). Thus, if § 506(b) is necessarily implicated, then only an *over-secured* creditor may recover attorneys' fees disclosed under Rule 3002.1(c). *See Herman*, No. 15-80027-G3-13, 2016 WL 520306, at *2 (holding creditor was over-secured as required by § 506(b) but failed to establish that claimed amount was incurred); *Susanek*, No. 12-23545-GLT, 2014 WL 4960885, at *3 (holding creditor "demonstrated an entitlement

to postpetition fees as an over-secured creditor" pursuant to Rule 3002.1).

The Court is not convinced that attorneys' fees allowable under Rule 3002.1(e) are limited to over-secured creditors under the language of 11 U.S.C. § 506(b). Neither the text of Rule 3002.1, nor the Advisory Committee Notes, nor the Official Form make any reference to § 506(b). If the fees disclosed pursuant to Rule 3002.1(c) were intended to be subject to § 506(b), then requiring a mere *notice*, as opposed to a motion, and hiding that notice in the claims register,[10] as opposed to requiring that it be filed on the docket, is a peculiar way to express that intent. Further, Rule 3002.1(e) expressly provides that the court's determination of the enforceability of the fees is focused on non-bankruptcy law. The Court has already found that the fees are required under the loan agreement and are enforceable under Georgia law. To disallow them because § 506(b) only allows post-petition fees to over-secured creditors is to decide the matter under bankruptcy law. More troubling is the fact that § 506(b) allows a creditor to collect fees that are *unenforceable*[11] under Georgia law as long as they are "reasonable" and "provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). On the other hand, Rule 3002.1(e) provides just the opposite: the claimed fees must be enforceable under non-bankruptcy law.

Another reason to question the applicability of § 506(b) to fees disclosed

---

[10] Pursuant to Rule 3002.1(d), "[a] notice filed and served under . . . this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim."

[11] "In the case of an oversecured creditor, § 506(b) allows attorney fees provided by contract to be added onto the secured claim to the extent they are reasonable. The statute requires that the fees be provided for by contract and that they be reasonable; it does not require them to be enforceable under state law." *Amron*, 376 B.R. at 53.

AO 72A
(Rev. 8/82)

pursuant to Rule 3002.1(c) is to consider what happens if the fees are *approved* by the court

after a determination under Rule 3002.1(e). In the *Sheppard* case, the court addressed what

action is to be taken with respect to a notice of fees:

> The Trustee's Motion also seeks clarification whether the Notice should be
> construed as a claim or a demand for payment that the Trustee is required to pay
> through the case. The Trustee is obligated to pay allowed claims in accordance
> with the confirmed plan. Fed. R. Bankr.P. 3020 ("[A]fter a plan is confirmed,
> distribution shall be made to creditors whose claims have been allowed.") **The
> Trustee has no obligation, and indeed has no authority, to pay fees, expenses
> or charges identified in a notice filed in accordance with Bankruptcy Rule
> 3002.1.** Bankruptcy Rule 3002.1(d) requires that a notice of postpetition fees,
> expenses, or charges be filed as "a supplement to the holder's proof of claim." Had
> it been the intent of the drafters that a notice filed under Bankruptcy Rule 3002.1
> should be construed as a claim or as a demand for payment, the rule would have
> simply required that the notice be filed as an amended proof of claim instead of
> as a supplement thereto. A creditor that wants to be paid for postpetition fees or
> charges through the Chapter 13 Plan must file a formal amended proof of claim.
> 11 U.S.C. § 1305.

*In re Sheppard*, No. 10-33959-KRH, 2012 WL 1344112, at *4 (Bankr. E.D. Va. Apr. 18,

2012) (emphasis added). The *Sheppard* court suggests that nothing "happens" in the pending

bankruptcy case with the post-petition fees unless the creditor files a motion for allowance

of a post-petition claim pursuant to 11 U.S.C. § 1305. But that is not what PHH Mortgage

seeks to do. It has not sought allowance of a post-petition claim under § 1305. It is providing

notice of the fees that will be added to the debt.[12] Nothing in Rule 3002.1(c) suggests that the

notice of fees is an alternative mechanism for amending the secured creditor's claim. Thus,

---

[12] As discussed above, paragraph 9 of the Security Deed provides that "[a]ny amounts
disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by
this Security Instrument. These amounts shall bear interest at the Note rate from the date of
disbursement and shall be payable, with such interest, upon notice from Lender to Borrower
requesting payment." (Dckt. 32-1, pp. 7-8).

✎AO 72A
(Rev. 8/82)

while § 506(b) allows an over-secured creditor to augment its claim, that is not the function of Rule 3002.1(c). As the *Sheppard* court explained, "[t]he notice required by Bankruptcy Rule 3002.1 is not intended to be either a pleading or a claim. It is simply a statement that a creditor files to inform the debtor that postpetition expenses have been incurred. It is akin to providing an annual escrow statement." *Id.*

Providing notice of fees to debtors so they will not be surprised to learn at the conclusion of their Chapter 13 cases that they owed fees, expenses, or charges was the purpose of Rule 3002.1. As the Advisory Committee Notes to the Rule observed: "Timely notice of these changes [and fees] will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust post-petition mortgage payments to cover any properly claimed adjustment." Fed. R. Bankr. P. 3002.1 Advisory Committee's Note to 2016 Amendment. Notably absent from this commentary is any limitation of Rule 3002.1 to over-secured creditors, as would be the case if the Rule necessarily invokes § 506(b).

While PHH Mortgage takes the position that its fees are recoverable "pursuant to § 506(b)," it offers no analysis of how that Code section relates to Rule 3002.1. (Dckt. 32, p. 2). The Court has expressed its skepticism about that issue. But, since PHH Mortgage is not an over-secured creditor, § 506(b) will not support the requested attorneys' fees. The Court need not decide whether § 506(b) precludes the collection of the subject attorneys' fees in any event for the reasons discussed below.

**F. Disallowance of Fees Would Not Impermissibly Modify Rights in Violation of §**
**1322(b)(2).**

PHH Mortgage has argued that disallowance of its fees would "be tantamount to modifying [its] claim which is secured by the Debtor's principal residence." Although PHH Mortgage did not cite a Code section for this proposition, presumably it meant that disallowance of its fees would be tantamount to modifying its claim in violation of 11 U.S.C. § 1322(b)(2) (Dckt. 32, p. 2). Aside from this assertion in its response to the Motion for Determination, PHH Mortgage offers no further argument in support of this proposition. Section 1322(b)(2) prohibits modification of the "rights" of a claim "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2); *Nobelman v. American Sav. Bank*, 508 U.S. 324, 322 (1993) ("[T]o give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan . . . would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where . . . the lender's claim is secured only by a lien on the debtor's principal residence."). One of the "rights" of PHH Mortgage is its contractual right to attorneys' fees under paragraph 9 of the Security Deed; indeed, those fees become additional debt and bear interest. Thus, one court has observed that where the contractual provision clearly allows attorneys' fees to a secured creditor seeking to protect its claim in a bankruptcy case, denying such fees may impermissibly "modify the rights of holders of secured claims" in violation of 11 U.S.C. § 1322(b)(2). *See In re Susanek*, No. 12-23545-GLT, 2014 WL 4960885, at *3 n.6 (Bankr. W.D. Pa. Sept. 30, 2014) (Taddonio, J.) ("Given

the explicit language in the mortgage, the Court questions whether the Trustee's position —

seeking an outright ban on the collection of attorneys' fees for the preparation of Rule 3002.1

notices — would constitute an impermissible modification of the Bank's rights as the holder

of claim secured primarily by the Debtor's principal residence. *See* 11 U.S.C. § 1322(b)(2).").

However, PHH Mortgage is only entitled to attorneys' fees if those fees actually were

incurred and are enforceable under Georgia law. The whole purpose of Rule 3002.1 is not to

modify those rights but to confirm their existence and scope. In the absence of any further

support for this argument, the Court is unable to conclude that a proper application of Rule

3002.1(e), even where the fees are disallowed, would impermissibly modify the contract in

violation of § 1322(b)(2).


G.   **Evidence in Support of the Claimed Fees**

Regardless of whether § 506(b) applies, PHH Mortgage has not proven the fees

requested. As required by Bankruptcy Rule 3002.1(d), PHH Mortgage correctly filed the

Notice of Fees (using Official Form 410S2) as a supplement to its proof of claim. Official

Form 410S2 does not require the holder of the claim to attach supporting documents, nor are

there any Form Instructions which reference any such documentation requirements.

Accordingly, as an initial matter, the lack of documentation in the Notice of Fees is not fatal

to the evidentiary burden imposed on PHH Mortgage.

But Form 410S2 does put the creditor on notice that: "The debtor or trustee may

challenge whether the fees, expenses, and charges you listed are required to be paid. See 11

U.S.C. § 1322(b)(5) and Bankruptcy Rule 3002.1." And, of course, that is what happened here. The Court has found generally that the fees are required under the Security Deed and are enforceable under non-bankruptcy law. What is lacking is proof that the attorneys' fees were incurred and that they were reasonable. The party seeking attorneys' fees under Rule 3002.1 "must properly support the billed fees or charges asserted in bankruptcy proceedings." *In re Hale*, No. 14-04337-HB, 2015 WL 1263255, at *3 (Bankr. D.S.C. March 16, 2015). "Unlike a standard proof of claim, a notice filed under Rule 3002.1 does not constitute *prima facie* evidence as to the validity or amount of the claimed charges." *In re Susanek*, No. 12-23545-GLT, 2014 WL 4960885, at *2 (Bankr. W.D. Pa. Sept. 30, 2014) (emphasis in original). Thus, "simply including 'Attorney fees' or "Bankruptcy/proof of claim fees' on the 3002.1 Notice . . . does not necessarily support the charge made." *In re Pittman*, No. 14-03404-HB, 2015 WL 1262837, at *2 (Bankr. D.S.C. March 16, 2015). As the *Pittman* court explained,

> In this matter, the Court cannot even determine from the documents provided that any attorney was involved in the preparation and filing of [the creditor's] claim and 3002.1 Notice. Without any response, testimony, or other evidence presented by [the creditor] to demonstrate . . . that such fees were actually incurred and are necessary and/or reasonable, there is insufficient information for a finding that the requested fees for the services are permissible.

*Id.* at *3. *See also Hale*, No. 14-04337-HB, 2015 WL 1263255, at *3 (noting that simply listing the fees on the 3002.1 notice does not explain "why the services of an attorney were needed, whether the charges are reasonable on the particular facts of the case, who performed the work, the time spent on task, [and] the rate charged"). Those details are likewise lacking in this case. For example, the Court has assumed that both the $250.00 attorneys' fees and the

$350.00 "Bankruptcy/proof of claim fees" represent attorneys' fees, but the latter claim is not so described. Further, the identity of the attorney is not revealed. In fairness, the Official Form includes ten (10) preprinted categories of expense, including the two used by PHH Mortgage. The Official Form itself does not invite further elaboration (with the exception of line 10 and the "Other" categories) and only requires by way of itemization that the fee amount be "listed" and the "dates incurred" be provided.[13] But once the notice of fees is challenged, more evidence is required.[14] It would not have required much proof to convince the Court that attorneys' fees of $600.00 for the documents (42 pages) comprising its proof of claim were reasonable.[15] Cf. In re Polly, 2016 WL 3004439, No. 15-31834(1)(13), *1-2 (Bankr. W.D. Ky. May 17, 2016) (noting creditor may establish it is entitled to attorneys' fees by filing an affidavit detailing the legal work performed in connection with debtor's mortgage). Here, however, PHH Mortgage failed to appear at the July 20, 2017 hearing and presented no evidence by way of affidavit or otherwise in support of its requested attorneys' fees. Accordingly, the Court finds PHH Mortgage is not entitled to the $600 in attorneys' fees

---

[13] On line 3 "Attorney fees," PHH Mortgage did add the following description: "Prep/analysis of 410A."

[14] The court in *Hale* warned that "mortgage creditors' Rule 3002.1 notices must provide adequate descriptions for such contractual charges" and that "the Court may find the criteria of Rule 3002.1(e) unsatisfied in future challenges to Rule 3002.1 notices where a fuller description of the services performed is not provided in the notices." *Hale*, 2015 WL 1263255, at *3.

[15] "In this Court's view, the preparation and filing of a proof of claim is not a perfunctory act. Rather, the proper filing of a proof of claim is vital to the protection of a creditor's claim, and there are serious and far-reaching implications for failing to file a proof of claim correctly. A claim that is not properly drafted can be stripped of the presumptive validity accorded by Bankruptcy Rule 3001." *Susanek*, 2014 WL 4960885, at *2 (internal quotations and citations omitted).

sought in its Notice of Fees. A separate Order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 29th day of September, 2017.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia